UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANGELO SHAMERE GREEN,

    Defendant.
_____/

Case No. 1:24-cr-69

Hon. Hala Y. Jarbou

## OPINION

Defendant Dangelo S. Green was indicted for one count of felon in possession of a firearm and one count of felon in possession of ammunition under 18 U.S.C. § 922(g)(1). (Indictment 1-2, ECF No. 1.) Before the Court is Green's motion to dismiss the indictment under the Second Amendment. (ECF No. 41.) For the reasons discussed herein, the Court will deny the motion.

### I. BACKGROUND

On February 21, 2024, law enforcement officers in Muskegon Heights responded to a call that shots had been fired. While responding to this call, officers stopped Green as he was running down the street. When officers asked Green about shots fired in the area, Green explained that the shots were directed at him. He stated that individuals in a vehicle shot at him three times. In the process of confirming Green's identity, officers discovered that Green had an unloaded Taurus, Model G2C, 9mm semi-automatic pistol in his coat pocket.

On April 8, 2024, a Muskegon police officer pulled Green over for a speeding violation. The car's license plate was not associated with any insurance coverage and Green did not have proof of insurance. The officer informed Green that driving without insurance was a misdemeanor

offense, then conducted a search. In a search of Green's person and vehicle, the officer found $800 of cash and a box of 7.62x39 ammunition.

Given his criminal history (see below), Green was indicted for felon in possession of a firearm and felon in possession of ammunition for these incidents.

### A. First Conviction

Green's criminal history dates back to 2019, when he was first charged with violating Michigan concealed carry laws. (Assignment to Youthful Trainee Status, ECF No. 48-1, PageID.140.) Green was shot in an incident that led to his arrest and eventual guilty plea. (2019 MDOC Presentence Report, ECF No. 48-2, PageID.147.) Muskegon police officers responded to reported gunshots in the area. When officers arrived on the scene, they found a red SUV with around 20 bullet holes in it. (*Id.*) Green, who was visiting his mother's house, told the officers that a man—with whom Green had previously fought in the street—came to kill him.[1] (*Id.*) When Green saw the man's vehicle pass by, Green followed him (in the red SUV) with the intent to fight him. (*Id.*, PageID.147-148.) The man later stopped at an intersection and shot back at Green. (*Id.*) Green's right arm was bleeding as a result of the incident. (*Id.*)

In the process of getting Green medical attention, officers found two firearms in his possession. (*Id.*, PageID.148) The first was a fully loaded Taurus revolver. (*Id.*) The second was a Taurus .380 auto; the slide was in the "lock position" and the pistol was empty, which signaled that this firearm had been used to fire ammunition. (*Id.*) Green pleaded guilty to violating Michigan's carrying-a-concealed-weapon statute. (*Id.*, PageID.143.)

---

[1] It is unclear why Green thought the man was trying to kill him, let alone why Green thought the man came to this area of Muskegon with a contemporaneous intent to kill him. He claimed that his mother plotted to have him killed, information he discovered "by praying on it." (2019 MDOC Presentence Report, PageID.147.)

2

### B. Second Conviction

In 2020, while on probation for his 2019 crime, Green once again violated Michigan's carrying-a-concealed-weapon statute.  (2023 MDOC Presentence Report, ECF No. 48-4, PageID.166.)  While Green was driving an SUV, he swerved around a puddle and almost collided with an officer's vehicle head on.  (*Id.*, PageID.170.)  The officer then pulled Green over.  (*Id.*)  When the officer asked if he could search Green's vehicle, Green informed the officer that there was a scale in the car.  (*Id.*, PageID.171.)  After the officer said that possessing a scale is not illegal, Green consented to a search.  (*Id.*)  Green's passenger, a 15-year-old girl, was holding a bag.  (*Id.*)  After investigating, the officer determined it was Green's bag.  (*Id.*)  The bag contained a small, loaded handgun, multiple phones, and a bag with suspected lysergic acid diethylamide ("LSD") tablets.  (*Id.*)  In total, the officer confiscated a Titan 25 caliber handgun with the serial numbers scratched off, five bullets, $631 in cash, suspected LSD tabs, and five cellphones.  (*Id.*)  Green pleaded guilty to the charge of carrying a concealed weapon.  (*Id.*, PageID.166.)

### C. Third Conviction

In 2022, Green pleaded guilty to a misdemeanor charge for drug possession (for events taking place the year prior).  (Misdemeanor Conviction Report 1-2, ECF No. 48-5.)  Green was pulled over for speeding when an officer detected the odor of marijuana coming from his vehicle.  (*Id.* at 2.)  After a search of Green's person and vehicle, the officer discovered 59 tablets of LSD,[2] multiple phones, a scale, and $1,022 of cash.  (*Id.*)  Originally, Green was separately charged with drug possession with the intent to distribute as well, but that charge was dismissed as part of his plea deal for simple possession.  (2/13/2023 J. of Sentence 1, ECF No. 52-2; Misdemeanor Conviction Report 1-2.)

---

[2] Subsequent lab tests confirmed the LSD content.  (Misdemeanor Conviction Report 2.)

### D. Fourth Conviction

In 2023, Green pleaded guilty to another violation of Michigan's carrying-a-concealed-weapon statute. (7/26/2023 J. of Sentence 1, ECF No. 48-6.) The year prior, Green was pulled over due to an illegal window tint. (New Conviction Update Report 3, ECF No. 52-3.) After detecting an odor of marijuana, and after Green handed the officer a bag of marijuana, the officer conducted a search of the vehicle with assistance from a K-9 unit. (*Id.*) The search uncovered several bags of marijuana, a loaded handgun, a scale, sandwich bags used to package narcotics, and $9,457 in cash. (*Id.*) Green once again had drug trafficking charges dismissed in the process of pleading to a lesser charge.

\* \* \*

Green filed a motion to dismiss his current felon in possession charges. He argues that he is not dangerous, and under the Second Amendment, such charges can only apply to dangerous individuals.

## II. STANDARD

"[T]he Second Amendment confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). However, this individual right, "[l]ike most rights, . . . is not unlimited." *Id.* at 626.

The Court engages in a two-step test to "evaluat[e] whether a given firearm regulation violates the Second Amendment . . . ." *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022)). First, the Court must "discern whether the 'Second Amendment's plain text covers an individual's conduct.'" *Id.* at 495-96 (quoting *Bruen*, 597 U.S. at 24). If the individual's conduct is indeed covered by the Second Amendment, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The

4

law "need not be a 'dead ringer' or a 'historical twin'" to historical precursors. *United States v. Rahimi*, 602 U.S. 680, 692 (2024). However, the modern law "must comport with the principles underlying the Second Amendment," the contours of which are defined by the particular problems historical precursor laws addressed. *Id.*

"[T]he Second Amendment's plain text presumptively protects" the conduct of felons who carry firearms. *United States v. Williams*, 113 F.4th 637, 649-50 (6th Cir. 2024). Felons, generally, have a right to bear arms, and felon-in-possession laws "burden[] that right." *Id.* at 650. Therefore, "[t]he question becomes whether that burden is consistent with the principles underpinning our historical tradition of regulating firearms." *Id.* "[O]ur nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657.

### III. ANALYSIS

Green makes an as-applied challenge to the felon in possession statute, arguing that he is not dangerous and therefore his right to possess a firearm may not be infringed. For an as-applied challenge to the felon-in-possession statute, "the burden rests on [the defendant] to show he's not dangerous." *Id.* at 662. Green has not met this burden.

"When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction." *Id.* at 660. The "Court may consider any evidence of past convictions in the records, as well as other judicially noticeable information—such as prior convictions—when assessing a defendant's dangerousness." *Id.* "[D]istrict courts may make an informed judgment about how criminals commonly operate . . . . The dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Id.* The Court is "not confined to the fact of conviction alone, but may consider how an offense was committed." *Morton*, 123 F.4th at 499

5

(citing *Williams*, 113 F.4th at 663). If, through an "individualized assessment of dangerousness," the Court determines "[a defendant's] prior felonies represent a serious and direct threat to public safety," then the as-applied challenged fails. *Id.* at 500. The Court can look to "[t]he violent nature of [a defendant's] past felony convictions and of the offense conduct involved in the present offense." *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025).

Crimes that "create[] the possibility of a violent confrontation between the offender and [another person]" are often dangerous. *Williams*, 113 F.4th at 559. Ultimately, "crimes [that] put someone's safety at risk . . . justify a finding of danger." *Id.* The possession of a firearm, when done in conjunction with other violent or criminal activity, can be dangerous. *Id.* at 662 ("Agree[ing] to stash a pistol that was used to murder a police officer . . . demonstrate[s a defendant's] dangerousness.").

Green argues that because his previous convictions were for possession of a firearm, he is not dangerous. While the mere possession of a firearm is not necessarily inherently dangerous, when looking at the circumstances surrounding Green's convictions—as is permitted under *Williams* and *Morton*—it is clear that Green is dangerous.

As discussed above, Green's first conviction starts with dangerous conduct. He apparently pursued an individual with the intent to fight. When officers found Green, he possessed two firearms: one that was fully loaded and one that he had recently used (according to the officers' analysis). Possessing firearms—in violation of Michigan's carrying-a-concealed-weapon statute—while pursuing another individual with the intent to fight, constitutes a crime that puts someone's safety at risk. Green does not demonstrate that he was subjected to an imminent threat of serious bodily harm or that he used the firearm in self-defense. He may have thought that the other individual was, generally, dangerous, but the facts indicate that in this instance, Green was

6

the aggressor. He put himself in a dangerous situation, following another individual—while armed—looking to fight. Such conduct is dangerous. Thus, applying the felon-in-possession statute to Green is consistent with the history and tradition of our nation.

Other evidence in Green's criminal record also indicates dangerousness. Making an informed judgment about how criminals operate, Green possessed firearms while engaging in drug trafficking activity. In his second and fourth convictions, Green possessed firearms while also possessing a scale, illicit drugs, and large amounts of cash. In that fourth conviction, he also possessed multiple phones and sandwich bags used to package narcotics. In his third conviction, while officers did not find a firearm in his possession, Green possessed large amounts of narcotics, a scale, multiple phones, and large amounts of cash.[3] The circumstances of his convictions indicate dangerous drug trafficking activity. Not only does drug trafficking "in itself, pose[] a danger to the community . . . it often leads to violence." *Id.* at 659. Taking into account Green's entire criminal record, including the circumstances that led to Green's convictions, Green's possession of a firearm puts the safety of others at risk. As applied to Green, the felon in possession statute is consistent with this nation's history and tradition.

Of note, Green need not be convicted of drug trafficking offenses for the Court to consider this apparent drug trafficking activity. So long as the evidence of dangerous conduct is connected to a conviction in the defendant's criminal record, the Court can consider it to determine dangerousness. In *Williams*, the Court of Appeals clarified that "[t]he Government could have pointed to any one of [Williams's] convictions to demonstrate dangerousness," including the possession of a firearm (as a felon) "that was used to murder a police officer." *Id.* at 662. The

---

[3] Green argues that the Court cannot consider misdemeanor convictions. However, *Williams* instructs the Court to consider an "individual's entire criminal record." *Williams*, 113 F.4th at 657. The Court need not consider Green's misdemeanor to determine he is dangerous, although his misdemeanor conviction bolsters that finding.

7

Court of Appeals determined that this conduct (stashing a murder weapon) was dangerous without relying on an additional conviction related to the murder of the police officer. *Id.* Thus, the defendant need not be convicted of an additional crime (for Williams, accessory after the fact; for Green, drug trafficking) for the Court to consider underlying facts that suggest the defendant engaged in dangerous activity. Here, Green was never convicted of drug trafficking, but the circumstances surrounding his convictions indicate he was engaged in dangerous drug trafficking activity. This information is available in his criminal record when looking at his convictions, so the Court can consider it to determine whether or not Green is dangerous for the purposes of the as-applied challenge. Green's entire criminal record indicates that he is dangerous. He has not met his burden showing otherwise.

## IV. CONCLUSION

Each of Green's previous convictions indicate he is dangerous. Looking to Green's entire criminal record to make an individualized assessment of his dangerousness, Green is a direct threat to public safety. Green has not met his burden to prove otherwise. Applying the felon in possession statute to Green is consistent with the history and tradition of this nation's firearm restrictions. Therefore, the Court will deny Green's motion to dismiss the indictment under the Second Amendment.

The Court will enter an order consistent with this Opinion.


Dated: March 5, 2025                         /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE